IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON PHILLIPS,<br><br>       Plaintiff,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>       Defendants.<br>_____/ | No. C 11-02326 CRB<br><br>**MEMORANDUM AND ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITH PREJUDICE** |

     This is a case by a disgruntled enrollee in Kaiser's Medicare Advantage Plan ("MAP"). She was injured in a car accident, received medical treatment paid for by Kaiser via her MAP, and then got a $100,000 settlement from a liability insurer in connection with the car accident. Kaiser attempted to recover a substantial portion of that settlement pursuant to its rights under the Medicare statutes as a secondary payer to a third party source of funds (liability insurance).

     Plaintiff then filed a putative class action against Kaiser,[1] alleging that it "[has] and continue[s] to act illegally in [its] demand for and collection of repayments for medical services arising out of Personal Injury Claims at rates in excess of applicable Medicare rates." Compl. (dkt. 1) ¶ 5. Further, Kaiser "claims this right of recovery through a common

---

[1] Plaintiff has sued Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, The Permanente Medical Group, Inc., Healthcare Recoveries, Inc., and a company called Trover Solutions, Inc. They are referred to collectively as "Kaiser" except where necessary for purposes of discussing the parties' arguments regarding jurisdiction.

pattern and practice of deception by omission, misleading reasonable California consumers into entering into contracts for medical services with the Kaiser Defendants . . . thereby violating the Unfair Competition Law [("UCL"]. . . and [] provisions of Section 1770 of the Consumer Legal Remedies Act [("CLRA")]. . . ." Id.

Kaiser removed this action from the Superior Court of California, Alameda County, claiming two bases for federal court jurisdiction: (1) diversity jurisdiction under the Class Action Fairness Act ("CAFA"); and (2) complete preemption of Plaintiff's state law claims (meaning, essentially, that Plaintiff is actually asserting federal claims disguised as state law claims). Kaiser then moved to dismiss (dkt. 19), arguing preemption and failure to exhaust administrative remedies. Plaintiff, in turn, moves to remand (dkt. 23) and argues, in the alternative, that her state claims are not preempted and do not require exhaustion.

For the reasons that follow, Plaintiff's Motion to Remand is DENIED, and Defendants' Motion to Dismiss is GRANTED with prejudice.

## I.   BACKGROUND

The Medicare Advantage ("MA") program permits eligible individuals to elect to receive Medicare benefits from a private health insurer like Kaiser. See 42 U.S.C. § 1395w-21, 22.[2] Under the traditional Medicare fee-for-service ("FFS") program, Medicare pays health care providers directly for services rendered to Medicare beneficiaries. Id. § 1395d. Such payments are based on a FFS fee schedule. Id. § 1395g. In contrast, the MA program pays MA organizations, like Kaiser, monthly fees for Medicare beneficiaries who enroll in a MAP. Id. §§ 1395w-21, 23, & 24. The MA organization then bears the risk that the fees it receives from the MA program will be less than the cost of covered care, thereby incentivizing preventative care (or less patient favorable cost-saving strategies) rather than procedure based care and, hopefully, saving the government money in the long run. See id. § 1395w-22(a)(2)(A). The amount an MA organization receives per enrollee is based on a contract with the Centers for Medicare & Medicaid Services ("CMS"), an agency within Health and Human Services that administers the MA program. Id. § 1395w-27.

---

[2] Medicare Advantage was originally known as "Medicare+Choice" and was later renamed.

The Medicare Act grants MA organizations the right to be placed in a secondary-payer position to third-party sources of funds, such as funds from liability insurers, that are liable for the costs of a Medicare beneficiary's care. See id. § 1395w-22(a)(4) (an MA organization "may . . . charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in this section – (A) the insurance carrier . . . which under such law, plan, or policy is to pay for the provision of such services, or (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.").

\* \* \*

Plaintiff has been a Kaiser MAP enrollee since 2009. Compl. ¶ 6. Prior to becoming an enrollee, she received documents from Kaiser, including Kaiser's Evidence of Coverage ("EOC") for the Senior Advantage plan in which she was being enrolled. Id. ¶ 19.[3] "At no time during her review of the documentation she received from Kaiser did she ever, to her knowledge, review any information which explained to her potential obligation to reimburse Kaiser out of the proceeds of a Personal Injury Claim settlement or verdict relating to an accident for which she required medical care under her Kaiser MAP, the extent of that alleged obligation of reimbursement, or how the right of reimbursement the Kaiser defendants would claim differed from the amount that Medicare might attempt to enforce

---

[3] Kaiser has filed a Request for Judicial Notice ("RJN") in support of its Motion to Dismiss. Dkt. 16. The first exhibit in the RJN is Kaiser's 2009 "Evidence of Coverage for County of Sacramento," which Kaiser believes is the EOC Plaintiff is referring to in paragraph 19 of her Complaint. Plaintiff objects to the Court taking judicial notice of the 2009 EOC and does not concede that she received or reviewed it.

The Court can take judicial notice of the 2009 EOC because Plaintiff alleges that she "received enrollment documents . . . which she is informed and believes was the Kaiser Defendants' Evidence of Coverage [] document for the Senior Advantage plan in which she was being enrolled." Compl. ¶ 19 (emphasis added). See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994); Fed. R. Civ. P. 201(b). Although Plaintiff now says that she does not concede the authenticity of the 2009 EOC and does not know whether she received that document or some other document(s), she plainly alleges that she received Kaiser's EOC for the plan in which she was enrolled and has not shown that the EOC attached by Kaiser is not the one applicable to her.

In any case, even if the Court were to ignore the actual EOC, the ruling on these Motions would not change.

3

against her had she chosen to enroll in traditional Medicare as opposed to Kaiser's MAP." Id.

Plaintiff was involved in a serious car crash in mid-November 2009 and "was treated under her Kaiser MAP and by Kaiser as the result." Id. ¶ 21. Approximately one month later, she made a claim for compensation arising out of the accident, and the case settled shortly thereafter for $100,000. Id. ¶ 22. In the spring of 2010, Plaintiff received a letter from a law firm claiming to represent defendant Healthcare Recoveries. Id. ¶ 23. The firm enclosed a list of "medical benefits advanced on the Plan Members' behalf" by Kaiser in the amount of $88,205.46. Id. The letter further provided that the $88,205.46 figure was calculated pursuant to California Civil Code section 3040.[4] Id. Kaiser, through various intermediaries, continued to press its position that it was entitled to reimbursement of the $88,205.46, ultimately disrupting Plaintiff's receipt of those funds. Id. ¶¶ 24-27. In Plaintiff's view, Kaiser has no right to recover against her under federal law,[5] nor is there any authority for Kaiser to recover at rates in excess of Medicare FFS rates, notwithstanding whatever is provided in section 3040. Id. ¶ 25.

---

[4] Section 3040 provides in part that an MA organization like Kaiser may not recover more than "the sum of the reasonable costs actually paid to perfect the lien and one of the following: (1) For health care services not provided on a capitated basis, the amount actually paid . . . pursuant to that contract or policy to any treating medical provider. (2) For health care services provided on a capitated basis, the amount equal to 80 percent of the usual and customary charge for the same services by medical providers that provide health care services on a noncapitated basis in the geographic region in which the services were rendered."

The section goes on to provide that the lien cannot exceed the lesser of (1) "[t]he maximum amount determined pursuant to [the foregoing section]. (2) One-third [or one-half depending on whether the enrollee engaged an attorney] of the moneys due to the enrollee under any final judgment, compromise, or settlement agreement." Cal. Civ. Code. § 3040(a), (c), and (d).

[5] Federal law sets forth Kaiser's secondary payer rights, 42 U.S.C. § 1395y(b); 1395w-22(a)(4); 42 C.F.R. § 422.108(d)(2), but it does not provide a federal cause of action to recover reimbursement money that an MA organization like Kaiser is entitled to under the Medicare Act. Parra v. Pacificare of Az., Inc., No. CV 10-008-TUC-DCB, 2011 WL 1119736, at *5 (D. Aziz. Mar. 28, 2011). Instead, Kaiser must use the state courts to pursue reimbursement via, for example, a contract claim. Id.

4

Plaintiff filed suit in state Court on her own behalf and on behalf of a putative class.[6] She alleges violations of the UCL and CLRA.[7] Her claims are essentially that (1) Kaiser is violating the law by seeking reimbursement "in excess of standard Medicare rates[,]" and (2) in marketing the plan without telling potential enrollees that Kaiser will seek reimbursement at all or beyond that which would be sought in a traditional Medicare plan, Kaiser acted

---

[6] Plaintiff defines her putative class as follows:

> California consumers who are: Medicare beneficiaries that were enrolled in the KAISER Defendants' Kaiser MAP and: 1) received health care services from one or more of the KAISER Defendants as the result of suffering a personal injury in an accident; 2) thereafter made a legal claim arising out of that accident against a liability insurer, including but not limited to, an insurer providing uninsured or under-insured motorist coverage ("Personal Injury Claim:"); 3) subsequently received demand for repayment of charges allegedly incurred by the KAISER Defendants for providing medical services arising out of the third party claim; and 4) have lost money or property and suffered injury in fact as the result of that demand for repayment including but not limited to repayments to the DEFENDANTS of amounts in excess of applicable Medicare rates for such Personal Injury Claim related services.

Compl. ¶ 29.

[7] The UCL prohibits unfair competition, including any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.

Plaintiff's CLRA claim alleges that Kaiser is violating California Civil Code section 1770(a)(5), (7), (14), and (19), which provide as follows:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.
>
> (19) Inserting an unconscionable provision in the contract.

5

fraudulently,[8] unfairly, and unlawfully. Id. ¶ 34. She seeks equitable relief, money damages including restitution (presumably consisting of the difference between what enrollees would have had to reimburse under traditional Medicare and what they were required to reimburse to Kaiser), as well as attorneys' fees and costs.

## II.     MOTION TO REMAND

Kaiser removed this action from state court to this Court asserting that the case was removable on the basis of CAFA diversity and because it presents a federal question artfully pleaded as a state law claim. See Notice of Removal (dkt. 1) ¶¶ 9-10 (complete preemption) ¶ 11 (CAFA diversity). Plaintiff moves to remand to state court, arguing that (1) CAFA diversity jurisdiction does not exist because Kaiser has not shown that the amount in controversy exceeds $5 million and, in any case, a mandatory exception applies; and (2) Plaintiff's claims are not artfully pleaded federal claims, and the Medicare Act does not completely preempt them. Mot. to Remand (dkt. 23).

### A.     CAFA Diversity Jurisdiction

28 U.S.C. §§ 1332(d)(2) and (4) provide as follows:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
>      (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>
> . . . .
>
> (4) A district court shall decline to exercise jurisdiction under paragraph (2)–
>
>      (A)(i) over a class action in which–
>           (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>           (II) at least 1 defendant is a defendant–

---

[8] For example, Plaintiff, among other things, quotes from a 2010 Kaiser EOC that provides that, "If you obtain a judgment or settlement from or on behalf of a third party who allegedly caused an injury or illness for which you received covered services, you must pay us full Plan Charges for these services, except that the amount you pay will not exceed the maximum amount allowed under California Civil Code Section 3040 and any cost sharing amounts paid by you." Id. Plaintiff alleges that this disclosure "is so misleading and uncertain as to have no meaning to the reasonable consumer . . . ." Id.

6

           (aa) from whom significant relief is sought by members of the plaintiff class;
           (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
           (cc) who is a citizen of the State in which the action was originally filed; and
        (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
       (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

     (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

Id. Plaintiff argues that Kaiser has failed to show that the amount in controversy exceeds $5 million and that, regardless, this case falls within CAFA's mandatory exception to diversity jurisdiction under § 1332(d)(4).

### 1. Kaiser Has Shown That it is More Likely Than Not That More Than $5 Million is in Controversy

Nowhere in the Complaint does Plaintiff allege that more than $5 million is in controversy. Thus, Kaiser "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683 (9th Cir. 2006). Kaiser has met its burden. Indeed, at the hearing on this Motion, Plaintiff's counsel conceded that it was likely that the amount in controversy exceeds $5 million.

The crux of Plaintiff's and putative class members' claim for money damages is a restitutionary theory that Kaiser collected more by way of reimbursement than what it was permitted to collect under the Medicare secondary payer statute and/or its contract with plan enrollees. See Compl. ¶ 5 ("Defendants have and continue to act illegally in their demand for and collection of repayments for medical services arising out of Personal Injury Claims at rates in excess of applicable Medicare rates."); ¶ 29 (describing class as those who "lost money . . . as the result of [a] demand for repayment including but not limited to repayments to the DEFENDANTS of amounts in excess of applicable Medicare rates . . . ."). Thus,

7

putative class members primarily seek as money damages the difference between what Kaiser obtained from them and what Kaiser would have obtained if Kaiser collected an amount calculated using FFS guidelines.

Plaintiff conceded at oral argument that that amount – the difference between what Kaiser obtained by reimbursement and what it would have obtained under FFS guidelines – was likely greater than $5 million.  Further, Kaiser has provided a Declaration from Defendant Trover, Kaiser's collection agency, which says that (1) "the total Kaiser Senior Advantage Northern California Region Claims that our records show as outstanding is [well over $5 million], of which [well over $5 million] constitutes the total outstanding in-plan charges" and (2) "we have recovered on behalf of Kaiser Senior Advantage Northern California Region since March 5, 2007 the sum of [well over $5 million]"  Murphy Decl. (dkt. 48) ¶ 6.[9]

Accordingly, Kaiser has carried its burden of showing that it is more likely than not that more than $5 million is at stake.

### 2. **The Local Controversy Exception Does Not Apply**

#### a. **Section 1332(d)(4)'s Mandatory Exclusion Does Not Apply**

CAFA requires district courts to decline jurisdiction even when the threshold jurisdictional provisions are met when a case falls within section 1332(d)(4).  That section sets forth characteristics of "local" controversies that, in Congress's view, are better resolved in the state courts.  There are two different ways a case can fall into the local controversy exception in 1332(d)(4).  The <u>first</u> is a three-part test under which an action is local if (1) more than two thirds of putative class members are citizens of the state where the case was filed; (2) at least one key defendant is a resident of the state were the action was filed; and (3) "the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(I)-(II).  The <u>second</u> is a two part test under which the action is local if (1) at

---

[9] The portions of this Declaration containing the specific financial information were filed under seal because Kaiser and Trover credibly assert that such information is confidential and proprietary.

United States District Court
For the Northern District of California

8

least two-thirds of the putative class are citizens of the State in which the action was originally filed and (2) the "primary defendants" are citizens of the State in which the action was originally filed.

Neither of the two tests is satisfied here.

With respect to the first test, CAFA's legislative history shows that Congress did not intend for plaintiffs to defeat federal jurisdiction by filing essentially national or regional class actions limited to plaintiffs from one state.

> If the defendants engaged in conduct that <u>could</u> be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action. In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct –
> <u>not just where the proposed class members were injured</u>.

S. Rep. No. 109-14 at 40-41 (emphasis added); <u>Kearns v. Ford Motor Co.</u>, No. CV 05-5644 GAF(JTLX), 2005 WL 3967998, at *1 (C.D. Cal. Nov. 21, 2005). Here, Plaintiff alleges that Kaiser is seeking secondary payer recovery from enrollees beyond that which is authorized under the Medicare Act and without proper disclosure to prospective enrollees that it would do so. Although she presents the attack through the vehicle of California's consumer protection law, the same theory would support liability under other state's consumer protection laws as well and is based on an essentially federal question regarding the extent of Kaiser's secondary payer rights. Thus, this case is not "local" under section 1332(d)(4) even though it has been defined narrowly to include only California plaintiffs.

Nor is the second test for when an action is "local" satisfied. That test requires that <u>all</u> "primary defendants" be residents of the same state in which the action is filed. Here, Defendant Trover is not a California resident. Although Plaintiff argues that Trover is not a "primary defendant," Mot. to Remand (dkt. 23) at 14), such is belied by her Complaint. Both of her causes of action are asserted against "all Defendants," and there is no indication that Plaintiff would not seek recovery against Trover if Defendants are found liable. Although Trover's actions are alleged to have been done pursuant to its relationship with Kaiser, Trover is a separate legal entity and thus a "primary defendant." <u>See</u> S. Rep. 109-14 at 43

9

("[T]he term 'primary defendants' should include any persons who have substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed class . . . ."); Harrington v. Mattel, Inc., No. C07-05110 MJJ, 2007 WL 4556920, at *5 (N.D. Cal. Dec. 20, 2007).

### b. The Court Will Not Decline Jurisdiction Under 1332(d)(3)

Plaintiff also argues that, even if the mandatory exclusion in section 1332(d)(4) does not apply, this Court should exercise its discretion not to hear this action pursuant to section 1332(d)(3). Mot. to Remand (dkt. 23) at 15. Section 1332(d)(3) provides in part as follows:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . .

28 U.S.C. § 1332(d)(3). This provision does not apply because (1) more than two-thirds of the members of the proposed class are citizens of California and (2) one primary defendant is not a California resident.

### B. Conclusion Re Motion to Remand

Kaiser has established diversity jurisdiction under CAFA because the record contains evidence from which this Court can conclude that it is more likely than not that more than $5 million is in controversy. Indeed, Plaintiff conceded as much at the hearing on this Motion. Further, the mandatory exception to jurisdiction does not apply, and the Court declines to dismiss on a discretionary basis. Having concluded that removal was proper under CAFA, the Court does not address Kaiser's alternative argument that there is complete preemption.

## III. MOTION TO DISMISS

Kaiser argues that Plaintiff's state law claims are preempted by the Medicare Act. The Court agrees.

The Medicare Act contains an expansive express preemption provision. "The standards established under [the Medicare Act] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-

10

26(b)(3).[10] The Medicare Act also provides for Kaiser's secondary payer rights, prohibits states from limiting those rights, and provides standards for plan advertisements and marketing.[11] 42 U.S.C. § 1395y(b); 1395w-22(a)(4); 42 C.F.R. § 422.108(d)(2); 42 C.F.R. § 422.108(f) ("A State cannot take away an MA organization's rights under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer."); 42 U.S.C. § 1395w-21(h).  Further, the Medicare Act provides plan enrollees a mechanism for challenging benefits determinations. 42 C.F.R. §§ 422.600-422.612; 42 U.S.C. § 405(g).

---

[10] This preemption provision became effective in 2003 as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003. The prior preemption provision was more narrow, though still fairly broad:

(A) In general

The standards established under this subsection shall supersede any State law or regulation (including standards described in subparagraph (B)) with respect to Medicare+Choice plans which are offered by Medicare+Choice organizations under this part to the extent such law or regulation is inconsistent with such standards.

(B) Standards specifically superseded

State standards relating to the following are superseded under this paragraph:

(i) Benefit requirements (including cost-sharing requirements).

(ii) Requirements relating to inclusion or treatment of providers.

(iii) Coverage determinations (including related appeals and grievance processes).

(iv) Requirements relating to marketing materials and summaries and schedules of benefits regarding a Medicare+Choice plan.

42 U.S.C. § 1395w-26(b)(3) (2000).

[11] CMS reviews marketing materials and enrollment forms to ensure that they are not "materially inaccurate or misleading," do not "otherwise make material misrepresentations," and adequately set forth rules, the appeals process, and "[a]ny other information necessary to enable beneficiaries to make an informed decision about enrollment." Marketing materials are "any informational materials targeted to Medicare beneficiaries which: (1) promote the MA plan; (2) inform Medicare beneficiaries that they may enroll, or remain enrolled in a Part C plan; (3) explain the benefits of enrollment in a MA plan, or rules that apply to enrolles; (4) explain how Medicare services are covered under a MA plan, including conditions that apply to such coverage." 42 C.F.R. §§ 422.2260(1)-(4). Kaiser's EOC, for example, is a "marketing material" that must be approved by CMS. Clay v. Permanente Med. Group, 540 F. Supp. 2d 1101, 1009 (N.D. Cal. 2007). Indeed, it appears that Kaiser submitted to CMS marketing materials similar to those provided to Plaintiff, and CMS approved those materials.

1    The foregoing is why, in <u>Uhm v. Humana, Inc.</u>, 620 F.3d 1134, 1143 (9th Cir. 2011),
the Ninth Circuit concluded that Medicare Part D enrollees' breach of contract and unjust
enrichment claims based on an insurer's failure to promptly enroll them in a prescription
drug plan were "creatively disguised claims for benefits" that had to be exhausted
administratively before being brought to federal court.  This was because "the [plaintiffs]
have not alleged that [the insurer] promised anything more than to abide by the requirements
of the Act.  Nor did they identify or describe in their complaint any provision creating
obligations above and beyond [the insurer]'s obligations under the Act.  Thus, there is no
claim that the alleged contract imposed upon [the insurer] any duties above and beyond
compliance with the Act itself.  Instead, the [plaintiff]'[s] breach of contract claim is a
backdoor attempt to enforce the Act's requirements and to secure a remedy for [the insurer]'s
alleged failure to provide benefits."  <u>Id.</u>

     The parties heavily dispute whether Plaintiff's claims are disguised claims for
benefits.  Kaiser argues that its right to secondary payer recovery is a creature of the
Medicare Act and that Plaintiff's attempt to recover a restitutionary remedy reducing that
recovery is a disguised claim for benefits (i.e., Plaintiff's benefits consist of what she
receives in covered care <u>less</u> what Kaiser is entitled to recover from her).  <u>See</u> Opp'n to Mot.
to Remand (dkt. 28) at 8-9.  Plaintiff counters that (1) she had already received her benefits
from Kaiser before Kaiser's after-the-fact attempt at reimbursement occurred, so this is not
about benefits recovery; (2) Kaiser bases its recovery formula on California law (section
3040) and cannot avoid California law's application to its marketing and reimbursement
recovery practices; and (3) Kaiser's right to collect as a secondary payer from an enrollee,
though derived from federal law, can only be enforced in a state court action for breach of
contract, meaning that Plaintiff's claim concerning Kaiser's secondary payer rights under
that same contract must also be permissible under state law.  <u>See</u> <u>Parra</u>, 2011 WL 1119736,
at *5 ("Congress and the Secretary did no more than protect [an insurer's] right to charge
and/or bill a beneficiary for reimbursement, notwithstanding any state law or regulation to
the contrary[,]" and "the Medicare statutes at issue, here, do more than create a federal right

[on the insurer's part to secondary payer reimbursement]."). Mot. to Remand (dkt. 23) at 16-19; Opp'n to Mot. to Dismiss (dkt. 38) at 12-17.

To the extent Plaintiff is claiming that Kaiser is running afoul of the Medicare Act by collecting reimbursement from her in an amount greater than what is permitted under that Act she is making a claim for benefits and must exhaust that claim. See Heckler v. Ringer, 466 U.S. 602, 618 (1984). It does not matter that she is using state law as the vehicle to press her assertion. See Uhm, 620 F.3d at 1143 (holding, in the context of breach of contract and unjust enrichment claims, that "there is no claim that the alleged contract imposed upon Humana any duties above and beyond compliance with the Act itself.").[12]

It is true, however, that Plaintiff claims more than that Kaiser is seeking secondary payer recovery beyond that to which it is entitled under the Medicare Act. Indeed, Plaintiff's UCL and CLRA claims are based on allegations similar to those found not to "arise under" the Medicare Act in Uhm. For example, Plaintiff alleges that (1) "[i]n marketing and selling the Kaiser MAP to class members, without disclosing the fact that the Kaiser Defendants intend to and will assert a contractual right to recover reimbursement in excess of Medicare rates . . . and in continuing to conceal this critical information, Defendants . . . induced Plaintiff and the Class to believe they were receiving a product which was Medicare and its equivalent" and (2) "Plaintiff would not have elected the Kaiser MAP as opposed to traditional Medicare had she known the true facts about her increased obligations of reimbursement" and "[t]he same is true of the reasonable consumer who would have considered the concealed and omitted information material to his or her decision to elect [the] Kaiser MAP over traditional Medicare or other available option[s.]" Compl. ¶¶ 34, 35.

---

[12] To the extent Plaintiff argues that her challenge to Kaiser's secondary payer rights cannot "arise under" the Medicare Act because Kaiser does not have a federal cause of action to enforce such rights, see Parra, 2011 WL 1119736, at *5, she is mistakenly conflating the question whether Kaiser has a private right of action under federal law with the question whether she can challenge a benefits determination without exhausting her claim administratively. The fact that Kaiser has to resort to state law processes to collect secondary payer reimbursement when a beneficiary refuses to provide it does not change the fact that Plaintiff must exhaust a claim, however styled, that is "a backdoor attempt to enforce the Act's requirements and to secure a remedy for [the insurer]'s alleged failure to provide benefits." Id.

13

These allegations are similar to those in Uhm supporting the fraud and consumer protection claims raised in that case. Specifically, the plaintiffs in Uhm alleged "that [the insurer] made material misrepresentations and engaged in other systematic deceptive acts in the marketing and advertising of their Part D plan to induce the [plaintiffs] and putative class members to enroll." Id. at 1145. Thus, it was "the misrepresentations themselves which the [plaintiffs] [sought] to remedy. The [plaintiffs] may be able to prove the elements of these causes of action without regard to any provisions of the Act relating to provision of benefits." Id. Because the basis for the plaintiffs' claims was "an injury collateral to any claim for benefits[,]" the claims did not "arise under" the Medicare Act. Thus, the misrepresentation portion of Plaintiff's claims do not "arise under" the Medicare Act and do not need to be exhausted.

But simply because some portion of Plaintiff's UCL and CLRA claims do not "arise under" the Medicare Act does not mean that they are not preempted. Indeed, Uhm found that fraud and consumer protection claims based on underlying allegations similar to those alleged here were preempted "by the extensive CMS regulations governing [] marketing materials." 620 F.3d 1150-57. As in Uhm, application of California's consumer protection laws "could potentially undermine the Act's standards as to what constitutes non-misleading marketing. This is precisely the situation that both the current version of the Act's preemption provision as well as its previous incarnations contemplated and sought to avoid." Id. at 1152.[13] The combination of the expansive express preemption provision in the Medicare Act, as well the logic in Uhm, show that Plaintiff's state UCL and CLRA claims are preempted.

Plaintiff attempts to get out from underneath Uhm in series of three somewhat convoluted steps that ultimately collapse under their own weight. First, Plaintiff says that "the Ninth Circuit's holding in Uhm regarding preemption of state consumer protection

---

[13] Although Uhm was decided well after the 2003 amendments that expanded the preemption provision beyond those state laws and regulations "inconsistent" with certain enumerated standards, the court actually decided that case based on the prior preemption provision because "it is sufficient for our purposes that, at the very least, any state law or regulation falling within the specified categories and "inconsistent" with a standard established under the Act remains preempted. 620 F.3d at 1150.

14

statutes was limited to consumer protection provisions that are inconsistent with CMS marketing regulations, holding open the fact that state provisions that are **not** inconsistent with CMS marketing regulations are not preempted." Opp'n to Mot. to Dismiss (dkt. 38) at 15. Next, she asserts that the "essence" of her Complaint is an effort to "enjoin defendants from asserting unfair and unlawful creditor claims against plaintiffs, which claims arise, it at all, under state law." Id. Finally, she asserts that her "claim that defendants misrepresented their reimbursement rights in the materials referred to in the Complaint is a secondary claim, which becomes primary only if there is a decision on the merits that Kaiser can lawfully and fairly engage in its collection activities by demanding payment at greater-than-Medicare rates." Id. at 15-16.

Even assuming that the "essence" of the Complaint is to enjoin unfair and unlawful creditor actions rather than attack Kaiser's marketing practices, Kaiser's creditor actions are unfair and unlawful only if Kaiser is going beyond its rights under the Medicare Act to collect reimbursement as a secondary payer. But, as discussed above, Plaintiff cannot raise that claim without exhausting it because it is a disguised claim for benefits. What is left in the Complaint – her "secondary claim" "that defendants misrepresented their reimbursement rights" – is indistinguishable from the fraud and consumer protection claims found preempted in Uhm.[14] Accordingly, Plaintiff's UCL and CLRA claims are preempted.

//
//
//
//
//
//
//

---

[14] Indeed, Plaintiff does not really attempt to argue that her misrepresentation claims are distinguishable from those found preempted in Uhm. Instead, she argues (mistakenly, it turns out), that whether those claims are preempted is a "determination for another day . . . ." Opp'n to Mot. to Dismiss (dkt. 38) at 16.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (dkt. 23) is DENIED, and Defendants' Motion to Dismiss (dkt. 19) is GRANTED with prejudice.[15]

**IT IS SO ORDERED.**

Dated: July 25, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[15] The Court declines to dismiss with leave to amend because Plaintiff's claims either require exhaustion or are preempted. Amendment will not cure those deficiencies.